UNITED STATES v. ELGIN CHURNING CO. et al.

(Circuit Court, D. Rhode Island. December 31, 1910.)

No. 2,933.

INTERNAL REVENUE (§ 23*)—OLEOMARGARINE MANUFACTURE—SPECIAL TAX —
ELECTION—ACTION ON BOND.

    Rev. St. § 3232 (U. S. Comp. St. 1901, p. 2091), provides that no person
shall be engaged in or carry on any trade or business of a kind there-
after mentioned until he has paid a special tax therefor in the manner
provided. Section 3233 provides for registration of persons engaged in
such trades with the internal revenue collector, and sections 3238 and
3239 (page 2093) provide that such special taxes shall be paid by stamps
denoting the tax which shall be exhibited in the taxpayer's place of busi-
ness. *Held*, that a bond given by a manufacturer of oleomargarine as
authorized by Act Cong. Aug. 2. 1886, c. 840, § 5, 24 Stat. 210 (U. S. Comp.
St. 1901, p. 2230), to secure a compliance with the laws and regulations
in regard to the manufacture, removal, and sale of oleomargarine, and
providing that the manufacturer shall comply with all the requirements
of the law, and regulations "in regard to the manufacture, removal and
sale of oleomargarine" and shall not engage in any attempt to defraud
the government of any tax on their manufactures, and shall render a
true and correct return, etc., does not secure the manufacturer's liability
for the payment of the special tax.

    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 62–
67; Dec. Dig. § 23.*]

Debt on a bond by the United States of America against the Elgin
Churning Company and another. On demurrer to declaration. Sus-
tained.

Chas. A. Wilson, for the United States.

Stephen J. Casey, for defendant.

BROWN, District Judge. This is a demurrer to the declaration in
an action of debt on a bond of a manufacturer of oleomargarine. The
material portions of the bond are as follows:

    "That whereas the said Elgin Churning Company proposes to carry on or
engage in the business of manufacturer of oleomargarine at No. 66 Valley
street, in the town of East Providence, in the county of Providence and state
of Rhode Island:

    "Now, therefore, if the said Elgin Churning Company. as aforesaid, shall
comply with all the requirements of law and regulations in regard to the
manufacture, removal, and sale of oleomargarine, and shall not engage in any
attempt by themselves or by collusion with others to defraud the government
of any tax on their manufactures, and shall render truly and correctly all
the returns and inventories prescribed to the collector of the district, and
shall, in accordance with law, stamp, mark, brand, and affix caution notices
to all oleomargarine prepared by them before they sell the same or any part
thereof and before they remove any part thereof from the place of manufac-
ture for consumption or use, and shall not knowingly sell or expose for sale
any oleomargarine not marked, stamped, and branded as required by law,
then this obligation is to be void; otherwise to be in full force and virtue."

The breach of the bond set out is a failure of the manufacturer to
pay the special tax of $600.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The principal question is whether the surety can be made liable for a breach of the bond by the failure of the manufacturer to pay the special tax on the business.

The act imposes special taxes at different rates on the business of a manufacturer, of a wholesale dealer, of a retail dealer. Sections 3232–3241, inclusive, and section 3243, Rev. St. (pages 2091–2095, U. S. Comp. St. 1901), are so far as applicable made to extend to and include and apply to these special taxes. Section 3232 provides:

"No person shall be engaged in or carry on any trade or business hereinafter mentioned until he has paid a special tax therefor in the manner hereinafter provided."

Section 3233 provides for registration with the collector. Section 3238 provides that special taxes shall be paid by stamps denoting the tax. Section 3239 for exhibiting the special tax stamp in the place of business.

The general mode of enforcing the special taxes imposed upon a business or occupation, or upon persons engaged in such business, is the prohibition, under penalties, against carrying on the business until the special tax is paid. License Tax Cases, 5 Wall. 462, 18 L. Ed. 497. The requirement of special tax stamps denoting the payment of the special tax on the business constitutes an effective method of enforcing payment.

So far as the special tax imposed by the oleomargarine law on the occupation or business is concerned, there seems no more reason for the requirement of a bond to secure its payment by a manufacturer than by a wholesaler or retailer. The oleomargarine act requires bonds only from those persons who are producers of a product subject to tax, primarily for the purpose of securing against attempts to defraud the government of a tax on the manufactured article. While a bond seems unnecessary to secure payment of an occupation tax the amount of which is fixed by statute, it is useful in securing payment of taxes which are assessed upon the product and which can only be ascertained by determining the amount of the product.

The provisions of the statute requiring manufacturers of oleomargarine or renovated butter to file such notices, inventories and bonds, and keep such books, and render such returns of material and products, etc., as the Commissioner of Internal Revenue, with the approval of the Secretary, may require, seem designed to secure payment of the tax on the product rather than to secure payment of the tax on the occupation. In fact, so far as appears upon a hasty examination of the subject, it seems to be the general policy of the internal revenue laws to require bonds from only such special taxpayers as are engaged in the production of articles subject to tax. No instance has been brought to my attention in which a bond is required to secure a tax on an occupation as distinguished from a tax on a product, and no case is cited where a suit has been brought upon a bond for the recovery of an occupation tax.

Upon the whole, I am of the opinion that the bond whose requirement is authorized by section 5, Act Aug. 2, 1886, c. 840, 24 Stat. 210 (U. S. Comp. St. 1901, p. 2230) and which is required by regulations

pursuant thereto has no proper relation to the collection of the special taxes on the occupation, but that it is designed to secure compliance with laws and regulations in regard to the "manufacture, removal and sale of oleomargarine"; i. e., to the mode of carrying on the business as distinguished from compliance with those provisions of law which make payment a condition precedent to engaging in the business.

Upon this view the mode of enforcing payment of special taxes upon the business of a manufacturer of oleomargarine is uniform with wholesale and retail dealers in oleomargarine, and with all persons engaged in any business subject to a vocation tax. If a bond is required only of such persons as produce a taxable product, it is fair to conclude that it is to secure the payment of the tax upon their manufactures.

Demurrer sustained.